**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4144
_____

TOBIAS BERMUDEZ CHAVEZ, et al.,
v.
DOLE FOOD COMPANY, INC., et al.

(D. Del. No. 1-12-cv-00697)
____

JULIO ABREGO ABREGO, et al.,
v.
DOLE FOOD COMPANY, INC., et al.

(D. Del. No. 1-12-cv-00698)
_____

ALVARADO ALFARO MIGUEL FRANCISCO, et al.,
v.
DOLE FOOD COMPANY, INC., et al.

(D. Del. No. 1-12-cv-00699)
_____

JORGE LUIS AGUILAR MORA, et al.,
v.
DOLE FOOD COMPANY, INC., et al.

(D. Del. No. 1-12-cv-00700)

_____

EDWIN AGUERO JIMENEZ, et al.,
v.
DOLE FOOD COMPANY, INC., et al.

(D. Del. No. 1-12-cv-00701)

_____

GONZALEZ ARAYA FRANKLIN, et al.,
v.
DOLE FOOD COMPANY, INC., et al.

(D. Del. No. 1-12-cv-00702)


TOBIAS BERMUDEZ CHAVEZ, et al.,
                                                    Appellants

_____

On Appeal from the United States District Court
for the District of Delaware

(D.C. Nos. 1-12-cv-00697, 1-12-cv-00698, 1-12-cv-00699,
1-12-cv-00700, 1-12-cv-00701, and 1-12-cv-00702)
District Judge:  Honorable Richard G. Andrews

ARGUED JUNE 24, 2014

BEFORE:  FUENTES, GREENAWAY, JR., and
NYGAARD, *Circuit Judges*

(Opinion Filed:  August 11, 2015)

Scott M. Hendler, Esq.
HendlerLaw
1301 West 25th Street, Suite 400
Austin, TX 78705

Jonathan S. Massey, Esq. [Argued]
Massey & Gail
1325 G Street, N.W., Suite 500
Washington, DC 20005

Michael L. Sensor, Esq.
Perry & Sensor
P.O. Box 1568
704 North King Street
One Customs House, Suite 560
Wilmington, DE 19899

*Counsel for Appellants*

Caitlin J. Halligan, Esq. [Argued]
Gibson Dunn
200 Park Avenue, 47th Floor
New York, NY 10166

Andrea E. Neuman, Esq.
Gibson Dunn
3161 Michelson Drive, 12th Floor
Irvine, CA 92714

Somers S. Price, Jr., Esq.
Potter, Anderson & Corroon
1313 North Market Street
6th Floor, P.O. Box 951
Wilmington, DE 19801

William E. Thomson, III, Esq.
Gibson Dunn
333 South Grand Avenue
Los Angeles, CA 90071

*Counsel for Appellees Dole Food Company, Inc., Dole Fresh Fruit, Standard Fruit Company, Standard Fruit and Steamship Company*

Michael L. Brem, Esq.
Schirrmeister Diaz-Arrastia Brem
700 Milam Street, 10th Floor
Houston, TX 77002

Donald E. Reid, Esq.
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

*Counsel for Appellee Dow Chemical Co.*

Timothy J. Houseal, Esq.
Jennifer M. Kinkus, Esq.
Young, Conaway, Stargatt & Taylor
1000 North King Street

4

Rodney Square
Wilmington, DE 19801

D. Ferguson McNiel, III, Esq.
Vinson & Elkins
1001 Fannin Street
2300 First City Tower
Houston, TX 77002

*Counsel for Appellee Occidental Chemical Corp.*

John C. Phillips, Jr., Esq.
Phillips, Goldman & Spence
1200 North Broom Street
Bank of Delaware Building
Wilmington, DE 19806

*Counsel for Appellee AMVAC Chemical Corporation*

Kelly E. Farnan, Esq.
Richards, Layton & Finger
920 North King Street
One Rodney Square
Wilmington, DE 19801

*Counsel for Appellee Shell Oil Co.*

Steven L. Caponi, Esq. [Argued]
Blank Rome
1201 Market Street, Suite 800
Wilmington, DE 19801

R. Jack Reynolds, Esq.

Samuel E. Stubbs, Esq.
Pillsbury, Winthrop, Shaw & Pittman
909 Fannin
Suite 2000, Two Houston Center
Houston, TX 77010

> *Counsel for Appellees Chiquita Brands International Inc., Chiquita Brands, LLC, Chiquita Fresh North America, LLC*

Boaz S. Morag, Esq.
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, NY 10006

James W. Semple, Esq.
Morris James
500 Delaware Avenue, Suite 1500
Wilmington, DE 19081

> *Counsel for Del Monte Fresh Produce NA, INC*

————————

OPINION OF THE COURT

————————

NYGAARD, *Circuit Judge.*

## I.

The "first-filed rule" is a well-established policy of the federal courts that "[i]n all cases of concurrent jurisdiction,

the court which first has possession of the subject must decide it." *Smith v. McIver*, 22 U.S. (9 Wheat) 532, 535 (1824). This rule permits the district courts, in their discretion, to stay, transfer or dismiss cases that are duplicates of those brought previously in other federal fora. *See, e.g., Cedars-Sinai Med. Ctr., et al., v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997). Today, we are asked to review the contours of this rule and the discretion of the district courts under it.

## II.

This appeal is but a facet of procedurally intricate litigation concerning the alleged misuse of the pesticide dibromochloropropane (DBCP) on banana farms throughout Central America. Litigation has been ongoing in various federal and state courts for decades. Appellants—more than two hundred foreign agricultural workers—allege they were exposed to DBCP beginning in the 1960's and ending sometime in the 1980's. They maintain that improper exposure to this pesticide is to blame for the numerous health problems they have endured. Litigation began in 1993 with the filing of a putative class against the Dole Food Company, Inc., and other related companies in Texas state court. To our knowledge, no court—federal or state—has ever reviewed the actual merits of Appellants' claims. Instead, these matters have continued in various courts around the country on purely procedural questions. Not surprisingly, the procedural history associated with these cases is labyrinthine. Here, however, we confine our discussion to the procedural history of DBCP litigation that was recently undertaken in two states: Louisiana and Delaware.

A. *The Louisiana Action: Chaverri et al. v. Dole Food Co., Inc., et al.*

7

Numerous suits were filed in June of 2011 in the United States District Court for the Eastern District of Louisiana against Dole and others.[1] Among other things, this lawsuit alleged claims sounding in negligence, strict liability, and breach of implied warranty. The suits were consolidated and Dole moved for summary judgment.

On summary judgment, Dole argued that the Appellants' claims were time-barred under Louisiana's one-year statute of limitations. *See* La. Civ. Code Ann. art. 3492 (West, Westlaw through 2014 Regular Session). The District Court agreed and on September 17, 2012, granted Dole's motion for summary judgment. The matter was appealed to the United States Court of Appeals for the Fifth Circuit on October 5, 2012. The appeal was actively prosecuted, with oral argument taking place on September 4, 2013. On September 19, 2013, the Court of Appeals for the Fifth Circuit affirmed the Louisiana District Court in an unpublished, *per curiam* opinion. *See Chaverri v. Dole Food Co.*, 546 Fed. App'x 409 (5th Cir. 2014).

---

[1] Named as defendants in the Louisiana action were Dole Food Company, Inc.; Dole Fresh Fruit Company; Standard Fruit Company; Standard Fruit and Steamship Company, Del Monte Fresh Produce N.A., Inc., Chiquita Brands International, Chiquita Brands, Inc., Maritrop Trading Corporation, Dow Chemical Company, Occidental Chemical Company, Amvaco Chemical Company and Shell Oil Company. All of these entities joined in a motion to for summary judgment based on statute of limitations grounds. For simplicity, we will refer to this group of defendants as "Dole."

B.    *Delaware Federal Litigation: the Subject of This Dispute*.

Meanwhile, on June 1, 2012, while Dole's motion for summary judgment was pending in Louisiana District Court, the Appellants filed several actions in the United States District Court for the District of Delaware. These Delaware actions were brought against the same defendants listed in the Louisiana litigation and contained the same causes of action.[2] Importantly, Appellants admit that the actions filed in Delaware were "materially identical lawsuits" to those filed a year earlier in Louisiana. Appellants' Br. 12.

Dole Food Company filed a motion to dismiss the Delaware lawsuits on June 21, 2012, arguing for the application of the first-filed rule. This motion was joined by Dole Fresh Fruit Company, Standard Fruit Company, Standard Fruit & Steamship Company, and AMVAC Chemical Corporation (hereinafter "Dole Appellees"). The District Court agreed with the Dole Appellees and held that the first-filed rule applied to the Delaware cases. It then was faced with the discretionary decision whether to stay or dismiss the proceedings. The Delaware District Court dismissed the actions on August 21, 2012, reasoning that

---

[2] The set of defendants in this litigation are Dole Food Company, Inc.; Dole Fresh Fruit Company; Standard Fruit Company; Standard Fruit & Steamship Company; AMVAC Chemical Corp.; Del Monte Fresh Produce N.A., Inc.; Chiquita Brands International, Inc.; Chiquita Brands, LLC; The Dow Chemical Company; Occidental Chemical Corp.; and Shell Oil Company.

9

Appellants "filed in Delaware notwithstanding their choice to file first in Louisiana. Decisions have consequences; one fair bite at the apple is sufficient." App. 19-20.

The day after the Delaware District Court dismissed Dole, Appellees Occidental Petroleum, Del Monte Produce N.A., Inc., Dow Chemical Co., and Shell Oil (hereinafter "Occidental Appellees") likewise moved for dismissal based on the first-filed rule. On March 29, 2013, the District Court granted the Occidental Appellees motion as well. Although final judgment had been entered in the District Court for Louisiana, the District Court reasoned that the first-filed rule still applied because the case was on appeal to the Court of Appeals for the Fifth Circuit.

While Appellants' appeal was pending in the Court of Appeals for the Fifth Circuit, Appellee Chiquita Brands International, Inc., moved to dismiss, arguing a lack of personal jurisdiction. Chiquita Brands LLC and Chiquita Fresh N.A. LLC moved for a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and to dismiss based on res judicata and statute of limitations grounds.[3] The Delaware District Court dismissed the claims against Chiquita Brands International on May 30, 2013, finding a lack of personal jurisdiction. Later, on September 19, 2013, the Delaware District Court dismissed the remaining two Chiquita defendants (Chiquita Brands, LLC and Chiquita Fresh N.A. LLC) based on the first-filed rule and closed the case.

---

[3] Chiquita Brands International, Inc., joined in these motions, but only in the alternative in the event the District Court denied its motion to dismiss based on personal jurisdiction.

III.

We review the District Court's decision to apply the first-filed rule for an abuse of discretion. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988).[4] This means we cannot disturb the District Court's decision "unless there is a definite and firm conviction that the [District Court] committed a clear error of judgment in the conclusion it reached." *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 127 (3d Cir. 1993) (internal citations and quotation marks omitted). We see no clear error of judgment here and will affirm the District Court.

A. *The First-Filed Rule*

The first-filed rule counsels deference to the suit that was filed first, when two lawsuits involving the same issues and parties are pending in separate federal district courts. *Univ. of Pa.*, 850 F.2d at 971. We have been clear: where there is federal concurrent jurisdiction over a matter, "the court which first ha[d] possession of the subject must decide it." *Id*. (*quoting Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941) (internal citations and quotations marks omitted)). Appellants concede that they filed duplicative actions in the Delaware District Court, stating that the Delaware cases were "materially identical" to those they previously filed in Louisiana. Appellants' Br. 12. Therefore, the pivotal question becomes whether concurrent jurisdiction

---

[4] The District Court exercised jurisdiction under 28 U.S.C. § 1332(a). We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

11

existed at the time the Delaware actions were filed. We hold that it did.

Claims against the Appellees were filed in Louisiana District Court on June 1, 2011, and those same claims were filed against the same Appellees on June 1, 2012 in Delaware District Court. Therefore, concurrent jurisdiction existed on June 1, 2012 when the duplicative actions were filed.

The Appellants place great emphasis on the fact that the Louisiana cases were on appeal when the Delaware District Court dismissed the claims against the Occidental Appellees and two of the Chiquita Appellees. They argue that by the time the Delaware District Court dismissed the actions, concurrent jurisdiction no longer existed. But, as we see it, the procedural posture of the first-filed case on the date the second-filed actions were dismissed, is irrelevant to the analysis. The relevant point-in-time is the filing date of the duplicative action. If concurrent jurisdiction exists at that time, and the actions are truly duplicative, the first-filed rule can be invoked. This is what we meant when we held that "the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir. 1041) (quoting *Smith*, 22 U.S. at 535); *Univ. of Pa.*, 850 F.2d at 971.

A court obtains possession of a case through the filing of a complaint and the date of that filing, therefore, is the relevant inquiry under the first-filed rule. *See, e.g., Collegiate Licensing Co. v. American Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013) ("The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized

12

of the controversy should hear the case." (internal citation omitted)); *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991) ("[T]he well-established 'first-to-file rule,' which allows a district court to transfer, stay, or dismiss an action when a similar *complaint* has already been filed in another federal court . . .") (emphasis added). Analyzing a case under the first-filed rule requires a district court, in a sense, to take a snap-shot of the cases at a particular moment in time: the date of the filing of the second complaint. If, on the date of the filing of the second-filed complaint, the matters are duplicative, that is, materially on all fours, then a district court has the discretion to stay, transfer, or dismiss the second-filed matter. Here, materially identical cases against these same Appellees were pending in Louisiana District Court on June 1, 2012, the date the Appellants filed duplicative lawsuits in the Delaware District Court. Therefore, concurrent jurisdiction existed in June of 2012.

B.     *The District Court's Discretion and the Dismissal of the Delaware Actions*

The Appellants next argue that, even if the first-filed rule was applicable, the Delaware District Court should have stayed or transferred the Delaware cases, and that dismissing them with prejudice instead was an abuse of discretion. Our dissenting colleague agrees with this argument. We, however, do not because such a position is in tension with the purposes of the rule and would result in a wrongful limitation on the scope of a district court's discretion to fashion an appropriate response to a second-filed action. The scope of the District Court's discretion is very broad in these circumstances. As we said earlier, we will not find an abuse of discretion under the first-filed rule "unless there is a

definite and firm conviction that the [District Court] committed a clear error of judgment in the conclusion it reached." *Hanover Potato Prods.*, 989 F.2d at 127 (internal citation and quotation marks omitted).

The rationale underlying the first-filed rule is "to encourage[] sound judicial administration and to promote[] comity among the courts in the federal system." *Univ. of Pa.,* 850 F.3d at 971. The import of the first-filed rule is commonsensical: "[i]t is of obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals." *Crosley,* 122 F.2d at 930. The Delaware District Court's actions in this case are in line with the purposes of the rule. By dismissing these cases, the Delaware District Court "avoid[ed] burdening the federal judiciary and . . . prevent[ed] the judicial embarrassment of conflicting judgments." *Univ. of Pa.*, 850 F.2d at 977 (citations omitted). Nor did the Delaware District Court act woodenly, inflexibly, or mechanically in its application of the rule. *Id*. at 972, 976. Instead, by dismissing these duplicative cases, the District Court avoided "the waste of judicial time and energy." *Crosley,* 122 F.3d at 930.

Also, dismissal with prejudice is an appropriate response to the Appellants' own litigation strategy. Three days after filing the Delaware lawsuits, the Appellants' counsel informed the Louisiana District Court that the decision to file the duplicative law suits in Delaware District Court was strategic and that counsel recognized that: "the general rule is that duplicate cases in different federal judicial districts should not both proceed." App. at 388 (citations

14

omitted). Counsel then asked for the Louisiana District Court's "indulgence over the next several months," and did not move to stay or dismiss the actions pending in Louisiana federal court. *Id*. The Appellants felt it was "imperative" to preserve and protect their claims in Louisiana by filing duplicate cases in Delaware, admitting to the Louisiana District Court that they had also filed suit in Delaware because:

> The Louisiana Supreme Court is expected to conclusively determine the [opt out] issue later this year and before the Delaware Supreme Court is likely to have the opportunity to squarely address the matter. If the [Louisiana] Supreme Court rules that the Plaintiffs cases are not Prescribed, the Plaintiffs would elect to proceed in Louisiana because the prescription issue would have been conclusively determined. But if this Court and the Louisiana Supreme Court determine that the cases are in fact prescribed, then Plaintiffs can continue to pursue the merits of their claims in Delaware.

App. at 387. By their own acknowledgement then, Appellants were forum shopping. They wanted to keep the same litigation going in two different federal fora simultaneously to see in which one they would fare better. If

15

the Louisiana Supreme Court ruled in their favor, then the Appellants would elect to proceed in Louisiana because that issue would have been settled. However, if the Louisiana District Court and the Supreme Court of Louisiana ruled against them on the statute of limitations issue, they would then continue their litigation in Delaware. The Appellants could have asked the Delaware District Court to stay their claims, but they did not. Just as we have held that forum shopping is a basis for departing from the first-filed rule, *see Univ. of Pa.*, 850 F.2d at 976, it can also be a basis for enforcing the rule. Here, the Appellants not only filed first, but filed second as well. This duplication of litigation was of their own making and it was not an abuse of discretion for the Delaware District Court to dismiss their second-filed complaint with prejudice, instead of staying the matter.

We are also concerned that finding error in the Delaware District Court's dismissal here could create a "no dismissal" rule for these type of cases. That is, when faced with a second-filed action, a district court would only have discretion to stay or transfer while the first-filed action is pending. Such a rule, we believe, is inconsistent with our current jurisprudence, which clearly states that application of the first-filed rule be guided by principles of "fundamental fairness . . . [and] dictates the need for fashioning a flexible response to the issue of concurrent jurisdiction." *Univ. of Pa.*, 850 F.2d at 977 (internal citation and quotation marks omitted). Dismissing a matter—with or without prejudice— is part of a flexible response. Therefore, because the first-filed rule is flexible in nature, it does not proscribe the remedy of dismissal, nor does it mandate the remedy of a stay or transfer. In fact, our jurisprudence far from imposes such bright-line rules. We have instructed that a district court is

merely "bound to acknowledge these [equitable] principles" but the "term 'discretion' denotes the absence of a hard and fast rule." *Id*. (internal citations and quotation marks omitted).

Here, the District Court acknowledged the relevant considerations of the first-filed rule, and was persuaded to dismiss the second-filed actions. The District Court weighed heavily that the Appellants were blatantly forum shopping and were attempting to get a second bite at the proverbial apple. We can say then, that the Delaware District Court's calculation of "fundamental fairness" was guided by "what is right and equitable under the circumstances and the law," especially in light of the fact that the Appellants' attempt to evade Louisiana law "violates the equitable basis for the rule." *Id*. at 977-78.

Further, it is well within a district court's discretion to dismiss a second-filed action because a district court has an inherent power to control its docket and dismiss a duplicative action. *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) ("We will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." (quotation marks omitted)); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (stating that a district court, "[a]s part of its general power to administer its docket . . . may stay or dismiss a suit that is duplicative of another federal court suit."). And, finding that the District Court abused its discretion here would require us to determine that it made a clear error in judgment, *i.e.*, that it acted outside the scope of its discretion. *Hanover Potato Prods.*, 989 F.2d at 127. To do so, we believe, would require

17

us to retroactively limit the scope of a district court's discretion when faced with a second-filed action.

While the first-filed rule does admit some exceptions, there are none present in this case that warrant a departure from the rule. *See Univ. of Pa.,* 850 F.2d at 976-977 (surveying the "proper bases for departing from the rule" and noting that the "letter and spirit of the ... rule ... are grounded on equitable principles"). Appellants bring several arguments as to why their Delaware actions should be exempt from the first-filed rule, but they are all unavailing. First, Appellants argue that they should be exempted from the rule because invoking it would frustrate their choice of forum. This argument is nonsensical. Appellants chose to file in Louisiana first. Indeed, the Delaware District Court honored the Appellant's choice of forum: Louisiana. The Appellants also argue that the first-filed rule does not apply because they filed both the Louisiana and Delaware themselves. It is true that most first-filed rule issues arise where a plaintiff files in one district and then the defendant counter-sues in another (or, for example, seeks a declaratory judgment in the second district). There is no authority, however, which holds that the first-filed rule only applies in cases where the filings are initiated by different parties. For the rule to apply, all that is necessary is for the later filed action to involve the same parties and issues that are already before another federal court. *Univ. of Pa*., 850 F.2d at 971–72 (citing *Triangle Conduit & Cable Co. v. Nat'l Elec. Products Corp.*, 125 F.2d 1008, 1009 (3d Cir. 1941). It does not matter that the cases were commenced by the same party, in this case, the Appellants. Further, the principal reason for the first-filed rule is the avoidance of duplicative litigation, so it cannot

18

matter whether the same party brought both suits—what matters is whether the second suit is duplicative of the first.

Next, Appellants maintain that the first-filed rule should not apply here because litigating this matter in Delaware makes "eminent sense." Appellants' Br. at 31. Perhaps there is some sense in litigating this matter in Delaware, but the Appellants chose not to do so, instead filing their complaint in Louisiana. As we have already determined, the Appellants filed a second, duplicative case in Delaware to hedge their bets against an unfavorable outcome in Louisiana. This is forum shopping, which never makes "eminent sense." *Id*.

Finally, Appellants argue that their duplicative Delaware filing is a "reasonable response" to the Appellees' history of delaying tactics. A review of the record could reasonably leave one with the impression that the Appellees took full advantage of any opportunity to procedurally stall and/or delay these lawsuits over the decades. However, that is not a reason to abandon the first-filed rule. When reviewing the first-filed rule, we concern ourselves only with the two cases at issue – not any other procedural issues or history of related, but irrelevant litigation.

C. *Appellee Chiquita Brands International and Personal Jurisdiction*

In a separate order, the Delaware District Court held that it lacked personal jurisdiction over Appellee Chiquita Brands International, and granted its motion to dismiss. We review *de novo* the District Court's dismissal for lack of personal jurisdiction, *Eurofins Pharma U.S. Holdings v.*

19

*BioAlliance Pharma S.A.*, 623 F.3d 147, 155 (3d Cir. 2010), and we review the District Court's decision denying the Appellants' request to conduct jurisdictional discovery for an abuse of discretion. *Id*. at 157. We hold that the District Court did not err by dismissing Appellee Chiquita for lack of personal jurisdiction and denying the Appellants jurisdictional discovery.

Two types of personal jurisdiction exist: general and specific. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984). General jurisdiction is present when a plaintiff's claim arises out of the defendant's "continuous and systematic" contacts with the forum state. General jurisdiction can exist even if the cause of action is unrelated to the defendant's activities in the forum state. Specific jurisdiction exists when the plaintiff's claim arises out of the defendant's activities within the forum such that the defendant could reasonably anticipate being hauled into the state's courts. *Vetrotex Certainteed Corp. v. Consl. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1995). Appellants make no argument that the District Court had specific personal jurisdiction over Chiquita Brands.

Recently, the United States Supreme Court reviewed the requirements to establish general jurisdiction in *Daimler AG v. Bauman*, ⸺ U.S. ⸺, 134 S.Ct. 746, 760-61 (2014). There, the Supreme Court noted that when determining general jurisdiction, the appropriate consideration is whether a defendant's "'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Id.* at 761 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ⸺, 131 S.Ct. 2846, 2851 (2011)) (alteration in original). The Supreme Court

pointed out that for a corporation, "the place of incorporation and principal place of business" are where it is "at home" and are, therefore, the paradig[m] bases for jurisdiction. *Id.* at 760 (internal citations and quotation marks omitted). *Goodyear*, therefore, makes it "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (citations omitted). Chiquita Brands International argues that it was never 'at home' in Delaware, and we agree. The company is not incorporated in Delaware and does not maintain an office there. Nor, we note, does the company supervise its business from that state. Indeed, as the Delaware District Court found, Chiquita is a national company and its products are found across the country. In *Goodyear*, the Supreme Court seems to reject the idea that national corporations are subject to general jurisdiction throughout the country. *Goodyear*, 131 S.Ct. at 2855-56.[5]

Nothing on the record suggests that Chiquita Brands International is any more active in Delaware than it is in other states. Nor do any of its activities in moving and selling its products lead to a finding that its principal place of business

---

[5] Nor, as the Appellants suggest, does maintaining an interactive website subject a national corporation to general jurisdiction in a particular state. We have specifically held that "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Toys "R" Us, Inc., v. Step Two S.A.*, 318 F.3d 446, 454 (3d Cir. 2003).

21

is Delaware. The District Court, therefore, correctly dismissed this Appellee for a lack of personal jurisdiction.[6]

## IV.

In the end, we simply cannot say that the District Court abused its discretion in dismissing this case with prejudice. A district court's discretion is necessarily broad so as to handle the concerns associated with forum shopping and the first-filed rule. This discretion must include the ability to dismiss a case with prejudice, especially in a case such as this one where a party's forum shopping is so clearly on display. Therefore, and in light of the foregoing, we conclude that the Delaware District Court did not abuse its discretion in dismissing the Appellants' actions in favor of the first-filed litigation in Louisiana. We also find no error in the Delaware District Court's dismissal of Appellee Chiquita Brands International for a lack of jurisdiction. Therefore, for the foregoing reasons, we will affirm the Delaware District Court's orders.

---

[6] We also reject the Appellants' contention that the District Court abused its discretion in denying discovery for purposes of establishing jurisdiction.

*Fuentes, Circuit Judge, dissenting*:

More than two hundred plantation workers brought this suit alleging their employers and certain chemical companies knowingly exposed them to toxic pesticides over a period of many years. As a result, they say, they have injured kidneys, are infertile, and are at heightened risk of cancer. Twenty years after first bringing suit, no court has heard the merits of their claims. Because the Louisiana court dismissed on procedural grounds, the Delaware District Court's dismissal of the plaintiffs' claims—with prejudice— effectively ends the plaintiffs' lawsuit. The majority's affirmance of that decision, *i.e.*, the dismissal with prejudice of a duplicate claim filed in a second court, is not supported by our caselaw and is contrary to the decisions of the only other Courts of Appeals to have addressed the issue.[1]

---

[1] As discussed below, three other Courts of Appeals have addressed the appropriate disposition of second-filed suits in the context of the first-filed rule. None has approved dismissal with prejudice of the second-filed action on the basis of the rule. *See Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 444 (7th Cir. 2000) (holding that second-filed court's dismissal without prejudice was error because "dismissal created an unwarranted risk of legal prejudice"); *Asset Allocation & Mgmt. Co. v. W. Employers Ins. Co.*, 892 F.2d 566, 571 (7th Cir. 1989) ("[W]hy take chances? It is simpler just to stay the second suit."); *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 629 (9th Cir. 1991) ("[W]here the first-filed action presents a likelihood of dismissal, the second-filed suit should be stayed, rather than dismissed."); *Burger v. Am. Mar.*

I agree with the majority opinion that the first-filed rule applied to the plaintiffs' successive filing in Delaware, and, as such, that the District Court should have given the Louisiana suit priority. But I do not agree that the first-filed rule is a basis to terminate a claim that otherwise may be prosecuted. That is not something we have ever held before; it is contrary to our positions on successive litigation and concurrent litigation in other contexts; and it is inappropriate in light of the Supreme Court's command that we must adjudicate properly presented cases not heard elsewhere on the merits. As our sister circuits have done in like cases, I would vacate and remand for further proceedings.[2]

## I

In *Crosley v. Hazeltine* we adopted the first-filed rule: a comity-based policy that, when two federal courts possess the same case at the same time, the action filed first has priority.[3] In *E.E.O.C. v. University of Pennsylvania*, we

---

*Officers Union*, 170 F.3d 184, 1999 WL 46962, at *2 (5th Cir. 1999) ("When the jurisdiction of the first-filed court to hear the dispute is uncertain, it is an abuse of discretion to dismiss the claims in the second-filed court with prejudice, as it creates the risk that the merits of the claims could never be addressed.").

[2] I agree with the majority opinion's determination that the District Court lacked personal jurisdiction over defendant Chiquita Brands. Hence, I dissent in part.

[3] *See Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929-30 (3d Cir. 1941) (adopting "Chief Justice Marshall['s] salutary rule that, 'In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it.'")

2

elaborated on *Crosley* and discussed various scenarios where, for equitable reasons, that presumption should not apply.[4] These decisions have a clear, but limited, applicability to this appeal. They mean that the District Court correctly concluded that the Louisiana suit should have priority.

The difficult question here, however, is not whether the first-filed rule applies. Once we determine the rule applies, we must still decide whether it is permissible—solely on the basis of the policy—to dismiss the plaintiffs' claims with prejudice rather than stay the action or dismiss it without prejudice.[5] As the majority opinion acknowledges, the claims

---

(quoting *Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 535 (1824)); *see also First City Nat'l Bank & Trust v. Simmons,* 878 F.2d 76, 79 (2d Cir. 1989) ("[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second."); *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985) ("[C]ourts follow a 'first to file' rule that where two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case.").

[4] *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971-72, 976-77 (3d Cir. 1988) (discussing equitable limitations to the "policy of comity").

[5] "The primary meaning of 'dismissal without prejudice' . . . is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-06 (2001) (citing Black's Law Dictionary (7th ed. 1999)).

3

were not heard on the merits in Louisiana[6] and, under ordinary preclusion principles, are otherwise free to proceed in Delaware.[7] Nor, likely, were the plaintiffs' claims in Delaware time-barred under Delaware's statute of limitations.[8]

Having concluded that the first-filed rule applied, the District Court believed the possible options available to it were "transfer to the Eastern District of Louisiana, stay, or

---

[6] Maj. Op. at 6 ("To our knowledge, no court—federal or state—has ever reviewed the actual merits of Appellants' claims").

[7] "Res judicata bars a claim litigated between the same parties . . . in earlier litigation where the claim arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014). "The traditional rule is that expiration of the applicable statute of limitations merely bars the remedy and does not extinguish the substantive right, so that dismissal on that ground does not have claim-preclusive effect in other jurisdictions with longer, unexpired limitations periods." *Semtek*, 531 U.S. at 504.

[8] *Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 399 (Del. 2013) (in case arising from the same facts as the instant one, concluding that Delaware recognizes cross-jurisdictional tolling).

4

dismissal."[9] The majority opinion agrees, including as to dismissal with prejudice. On the majority opinion's view, the first-filed rule "permits the district courts, in their discretion, to stay, transfer, or dismiss cases that are duplicates of those brought previously in other federal fora."[10] The majority opinion cites to no decision of our court for this position.[11] Meanwhile, neither *Crosley* nor *University of Pennsylvania*[12] contain anything supportive of dismissal with prejudice, let alone endorse district court discretion to dispose of a second-

---

[9] *Chavez v. Dole Food Co. Inc.*, No. 12-697-RGA, 2012 WL 3600307, at *2 (D. Del. Aug. 21, 2012). The District Court did not cite to any decision of our court for this proposition.

[10] Maj. Op. at 5.

[11] Rather, the majority opinion cites to a Ninth Circuit case, *Cedars-Sinai Med. Ctr., et al v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997). Neither *Shalala* nor any other Ninth Circuit case has approved of dismissal *with prejudice* under the first-filed rule, nor even dismissal without prejudice where the first-filed suit may not be adjudicated on the merits. Much to the contrary, the position of the Ninth Circuit is that "where the first-filed action presents a likelihood of dismissal, the second-filed suit should be stayed, rather than dismissed." *See Alltrade*, 946 F.2d at 629.

[12] Nor our other first-filed rule cases: *Triangle Conduit & Cable Co. v. Nat'l Elec. Products Corp.*, 125 F.2d 1008 (3d Cir. 1942) (en banc) and *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 189 F.2d 31 (3d Cir. 1951) (en banc) *aff'd*, 342 U.S. 180 (1952).

5

filed case in any manner it chooses.[13] Indeed, the proper disposition of a second-filed case did not come up in *Crosley* or *University of Pennsylvania*.

*Crosley* involved an interlocutory appeal from a first-filed court's denial of a motion to enjoin second-filed, duplicative proceedings in another district court. Under our newly-adopted first-filed rule, we "conclude[d] that the District Court . . . having the power to issue the preliminary injunction prayed for, abused its discretion in refusing to exercise that power."[14] We had no occasion to say anything about what may be done by second-filed courts, and we did not do so in dicta. Meanwhile, to the extent we can glean something here from *Crosley*'s instruction to first-filed courts, it is that when a first-filed court enjoins prosecution of

---

[13] The majority opinion separately suggests we have limited review over a decision to dismiss with prejudice because it is part of the district court's docket management authority. Maj. Op. at 15. I do not see how a dismissal with prejudice, which enters final judgment on a complaint, falls within the rubric of docket management. Indeed, *In re Fine Paper Antitrust Litigation*, which the majority opinion cites, addressed a challenge to the district court's calendaring of proceedings. *See* 685 F.2d 810, 818 (3d Cir. 1982) ("We find no abuse of discretion by the district judge in his scheduling of discovery or of the trial."). *Curtis v. Citibank, N.A.* is not contrary to the dissent, either. In *Curtis*, the Second Circuit reversed the District Court's dismissal of a purportedly duplicate case on the basis that the cases were not actually duplicates. *See* 226 F.3d 133, 136 (2d Cir. 2000).

[14] *Crosley*, 122 F.2d at 930.

6

later-filed proceedings, the effect is that of staying—not dismissing—those other cases.[15]

University of Pennsylvania did involve a second-filed court. But the second-filed court in that case determined that, for equitable reasons, the first-filed rule did not apply.[16] University of Pennsylvania is a landmark first-filed rule case because of its comprehensive discussion of the considerations that bear upon whether or not the first-filed suit is entitled to priority.[17] But because we upheld the District Court's determination that the first-filed suit was not, in that case, entitled to priority, we had no occasion to say anything about what a second-filed court is to do when the rule does apply.[18]

---

[15] Cf. Asset Allocation, 892 F.2d at 571 (affirming portion of first-filed court's order enjoining party from proceeding in second-filed forum, but reversing portion of order requiring party to dismiss the parallel action).

[16] Univ. of Pa., 850 F.2d at 972.

[17] See id. at 971-72, 976-77.

[18] If anything, University of Pennsylvania is supportive of the dissent. In a footnote, we stated we were "puzzled" that the EEOC did not move to transfer or stay the University's abusive and anticipatory first-filed suit in the District for the District of Columbia. See id. at 976 n.4. In doing so, we cited to a statement of the Fifth Circuit that "In addition to outright dismissal, it sometimes may be appropriate to transfer the action or to stay it." Id. (citing W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 729 n. 1 (5th Cir. 1985)). As to dismissal, that Fifth Circuit decision stated that "a district court may dismiss an action where the issues

7

In short, the propriety of dismissal with prejudice under the first-filed rule is a question of first impression in our circuit.[19] We should address it with reference to the view of our sister circuits and leading treatises, considerations of comity and equity, and the rules and principles we apply in parallel contexts.

**II**

Unlike our Court, the Seventh, Ninth, and Fifth Circuits have addressed whether and when a second-filed court may dismiss a case on the basis of the first-filed rule.

---

presented can be resolved in an earlier-filed action pending in another district court." *W. Gulf Mar. Ass'n*, 751 F.2d at 729. I agree wholeheartedly. As discussed below, presented with a situation where a second court dismissed with prejudice despite a likelihood that the first court would *not* resolve the issues presented, the Fifth Circuit vacated the dismissal. *See Burger v. Am. Mar. Officers Union*, 170 F.3d 184, 1999 WL 46962 (5th Cir. 1999).

[19] That we have never previously reviewed a district court's dismissal with prejudice under the first-filed rule underscores the unusualness of the dismissal with prejudice in this case. Of course, we would not ordinarily have jurisdiction to review a stay, transfer, or non-final dismissal. *See Michelson v. Citicorp Nat. Servs., Inc.*, 138 F.3d 508, 516 (3d Cir. 1998) (emphasizing "the limited extent to which stays are appealable"); *Semerenko v. Cendant Corp.*, 223 F.3d 165, 172 (3d Cir. 2000) ("[A] dismissal without prejudice is not a final and appealable order under § 1291, unless the plaintiff can no longer amend the complaint or unless the plaintiff declares an intention to stand on the complaint as dismissed.").

These cases show that dismissal with prejudice under the first-filed rule should be limited to cases where some other legal basis—res judicata, jurisdiction, mootness, or the like—shows the plaintiffs are clearly unable to prosecute their claims before the abstaining court. Applying this basic rule, these Courts of Appeals have each reversed a second-filed court's dismissal where, as here, there was an apparent possibility that the claims at issue would not or could not be heard in the first-filed forum.

Beginning with the Seventh Circuit, two cases there are on point. First is *Asset Allocation v. Western Employers*.[20] Though the procedural posture differs from the instant case, the effect was the same: a first-filed court ordered the defendant to dismiss a reciprocal action it had filed involving the same issues in a second court.[21] While affirming the portion of the first court's order enjoining the parties from proceeding in the second forum,[22] the Seventh Circuit reversed the dismissal order. The court explained that if the first suit was dismissed before litigation was "well-advanced," there would be no reason to forbid pursuing the claim in the second-filed forum. Warning that statute of limitations problems could cause claims to needlessly go

---

[20] *Asset Allocation & Mgmt. Co. v. W. Emp'rs Ins. Co.*, 892 F.2d 566 (7th Cir. 1989).

[21] *Id*. at 571.

[22] *Cf. Crosley*, 122 F.2d at 929 (holding district court abused its discretion by failing to enjoin second-filed duplicative proceedings).

9

unheard, the court asked, "[W]hy take chances? It is simpler just to stay the second suit."[23]

The Seventh Circuit again focused on the cost of dismissing unheard claims in *Central States v. Paramount Liquor*, which held that a second-filed court's dismissal *without* prejudice was error because, compared to a stay, "dismissal created an unwarranted risk of legal prejudice."[24]

---

[23] *Asset Allocation*, 892 F.2d at 571. The court noted, "for completeness, . . . that if the second suit is harassing—vexatious—an abuse of process, the proper disposition is neither a stay nor a dismissal without prejudice; it is dismissal with prejudice, so that the plaintiff cannot refile suit." *Id.* I do not disagree that there is an "equitable doctrine that bars vexatious litigation." *See id.* at 572. This is "independent" from the first-filed rule, however, which applies to any "second, nonharassing lawsuit (albeit one identical to the first)." *Id.* Here, there is no dispute that the plaintiffs filed suit in Delaware to obtain relief from the defendants rather than to harass them.

[24] *Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 445 (7th Cir. 2000) ("*Central States*"). The Seventh Circuit in *Central States* observed that dismissal is more likely to be appropriate when the same party brings duplicate suits than when opposing parties bring dueling suits. As an example, it cited to *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221 (1993), which upheld the dismissal with prejudice of a second-filed action within the same district court that was procedurally dismissed for failure to timely serve process. The *Serlin* court affirmed given the first-case ended because of "the plaintiff's own failure to follow the rules" and unwillingness to dismiss the earlier case

10

The general rule, the court explained, is that "when comity among tribunals justifies giving priority to a particular suit, the other action (or actions) should be stayed, rather than dismissed, unless it is absolutely clear that dismissal cannot adversely affect any litigant's interests."[25]

In *Alltrade, Inc. v. Uniweld Products, Inc.*, the Ninth Circuit followed the Seventh Circuit's lead. [26] *Alltrade* determined that a second-filed court's dismissal *without* prejudice was problematic even as it was proper for the

---

voluntarily—without prejudice—and then refile it with proper service. *See id.* at 224.

For our purposes, *Serlin* was not a first-filed rule case, and the particular context of a failure to follow procedural rules in the same district court presents different considerations than when a different federal court exercising diversity jurisdiction determines a complaint is time-barred. *Cf. Walton v. Eaton Corp.*, 563 F.2d 66, 70-71 (3d Cir. 1977) (en banc) (discussed *infra* at n.47).

[25] *Central States,* 203 F.3d at 444. Judge Easterbrook presented this as a rule of general applicability for all concurrent litigation contexts. Reformulating the principle in a case where the same plaintiff filed identical suits in the same district, the court in *Gleash v. Yuswak* wrote that "even when prudence calls for putting a redundant suit on hold, it must be stayed rather than dismissed unless there is no possibility of prejudice to the plaintiff." *See Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002).

[26] *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622 (9th Cir. 1991).

second court to give priority to the first court. To wit, if the first-filed case terminated without an adjudication on the merits, the district court's dismissal meant the plaintiff "would have to file a new suit in [the second court] and would risk encountering statute of limitations problems."[27] A stay, on the other hand, would have preserved the district court's flexibility to secure the rights of plaintiff and defendant alike. Specifically, "should the [first] court dismiss the appeal and transfer what remains of the first-filed action, the stay could be lifted and the actions consolidated. On the other hand, should the [first] court decide that it has jurisdiction . . . , the stay could be lifted and the second-filed action dismissed or transferred."[28] Citing to *Asset Allocation*, the Ninth Circuit concluded that, "where the first-filed action presents a likelihood of dismissal, the second-filed suit should be stayed, rather than dismissed."[29]

Finally, there is *Burger v. American Marine Officers Union*, where the Fifth Circuit reversed a second-filed court's dismissal with prejudice.[30] The decision to reverse drew upon *Alltrade, Asset Allocation,* and Fifth Circuit caselaw holding that, when a plaintiff files duplicative suits in the same federal district, dismissal with prejudice is appropriate only when res judicata or collateral estoppel give preclusive effect to the

---

[27] *Id*. at 629.

[28] *Id*. (citation and internal quotation marks omitted).

[29] *Id*.

[30] *Burger v. Am. Mar. Officers Union*, 170 F.3d 184, 1999 WL 46962 (5th Cir. 1999).

first proceeding.[31] In light of these authorities, the court explained that "[w]hen the jurisdiction of the first-filed court to hear the dispute is uncertain, it is an abuse of discretion to dismiss the claims in the second-filed court with prejudice, as it creates the risk that the merits of the claims could never be addressed."[32] Instead, the Fifth Circuit held, the second-filed court should have stayed the proceedings or dismissed without prejudice.[33]

The leading treatises are in concert with our sister courts. Speaking of the first-filed rule as a doctrine of abstention—meaning a judge-made canon by which a court declines to exercise its jurisdiction—Wright and Miller say that "it is well settled that if the same issues are presented in an action pending in another federal court, one of these courts may stay the action before it or even in some circumstances enjoin going forward in the other federal court."[34] They say nothing of dismissal. Moore's Federal Practice, meanwhile, takes dismissal on directly, writing that "if the first-filed

---

[31] *Id.* (citing *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1160-61 (5th Cir. 1992)); *see also Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999) (stating that a second-filed court applying the first-filed rule "is not binding the litigants before it to a ruling of the first [court]").

[32] *Burger*, 1999 WL 46962 at *2.

[33] *Id.* at *3.

[34] 17A Charles Alan Wright et al., Fed. Prac. & Proc. Juris. § 4247 (3d ed.) ("Avoiding Duplicative Litigation").

13

action is vulnerable to dismissal on jurisdictional or statute of limitations grounds, the court in the second-filed action should stay it or transfer it, rather than outright dismiss it."[35] This circumstance is precisely the one presented in this case.

Then there are our district courts, the vast majority of which have applied the first-filed rule by staying the second case, transferring it, or dismissing it without prejudice.[36] The

---

[35] 17 Moore's Federal Practice ¶ 111.13[1][o][ii][A] (3d ed.).

[36] *See Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 523 (E.D. Pa. 2012) ("When the first-filed rule applies, a court has the option of dismissing the second-filed case without prejudice, staying it for the duration of the first-filed case, or transferring it to the forum where the first-filed case was brought."); *e.g. CTI Sys. SA v. Herr Indus., Inc.*, 2015 WL 1073667 (E.D. Pa. 2015) (dismissal without prejudice, with express leave to re-file if first court was unable to grant a remedy); *Englebert v. McGraw-Hill Global Educ. Holdings LLC*, 2014 WL 3109884 (E.D. Pa. 2014) (stay); *Plange v. Christ Hosp.*, 2014 WL 1790169, at *5 (D.N.J. 2014) (stay); *Miller v. Careminders Home Care, Inc.*, 2014 WL 1779362, at *4 (D.N.J. 2014) (transfer); *DePuy Synthes Sales, Inc. v. Gill*, 2013 WL 5816328, at *11 (D.N.J. 2013) (transfer); *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 463 (E.D. Pa. 2013) (transfer); *Inter City Tire & Auto Ctr., Inc. v. Michelin N. Am., Inc.*, 2013 WL 5567564, at *3 (D.N.J. 2013) (transfer); *Wheaton Indus., Inc. v. Aalto Scientific, Ltd.*, 2013 WL 4500321, at *5 (D.N.J. 2013) (transfer); *D & L Distribution, LLC v. Agxplore Int'l, LLC*, 959 F. Supp. 2d 757, 772 (E.D. Pa. 2013) (transfer); *Mahmoud v. Rite Aid Corp.*, 2012 WL

---

district court here is the only one I am aware of that dismissed a second case with prejudice despite the open likelihood that the earlier case would not adjudicate the matter on the merits.[37]

Our sister Courts of Appeals, the leading treatises, and most of our district courts agree: the applicability of the first-filed rule alone is insufficient to justify dismissal with prejudice, and dismissal with prejudice is inappropriate under the rule where, compared to a stay, it could cause properly presented claims to go unheard.

**III**

3560645, at *6 (D.N.J. 2012) (stay); *Worthington v. Bayer Healthcare, LLC*, 2012 WL 1079716, at *8 (D.N.J. 2012) (dismissal "with leave to re-file if [first] action is dismissed on procedural grounds"); *Vinik Marine, Inc. v. Ironhead Marine, Inc.*, 2012 WL 1067737, at *4 (D.N.J. 2012) (dismissal "without prejudice since the [first] court did not address the claims on the merits").

[37] The defendants bring but three examples of first-filed rule dismissals to our attention. In one case the dismissal was issued with express leave to re-file if the first forum dismissed on procedural grounds. *See Worthington v. Bayer Healthcare, LLC*, 2012 WL 1079716 (D.N.J. 2012). In the others there was no apparent possibility that the first court would not adjudicate the case on the merits. *See Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 586 (D. Del. 2007); *Funkhouser v. Chi-Chi's, Inc.*, No. 02:05CV638, 2005 WL 2545300 (W.D. Pa. 2005).

The majority opinion offers a few reasons why we should depart from the consensus viewpoint and embrace dismissal with prejudice as squarely within the authority of the second-filed court. For one thing, the majority opinion notes, dismissal with prejudice satisfies the primary goals of the first-filed rule in that it avoids duplicative proceedings, which serves comity and efficiency and prevents conflicting judgments.[38] For another, the majority opinion sees dismissal with prejudice as salutary when, as here, the same party filed both suits out of concern about a procedural dismissal in the first forum.[39] To the extent the plaintiffs "wanted to keep the same litigation going in two different federal fora simultaneously to see in which one they would fare better," the majority opinion sees dismissal with prejudice as "an appropriate response to the Appellants' own litigation strategy." [40] From this perspective, our sister Courts of Appeals' reversals might be distinguished, as in those cases the successive suits were filed by different parties.

I find these arguments unpersuasive. A second-filed court avoids duplicative litigation, conflicting judgments, and cross-district frictions whether it stays the matter or dismisses it. A stay also prevents gamesmanship. Regardless of who files each suit, a stay confines litigants to the first-filed forum until the conclusion of its proceedings. Res judicata and collateral estoppel would then prevent the relitigation of any claims that were, or could have been, previously heard on the merits. The additional benefit of a stay, as our sister Courts of

---

[38] Maj. Op. at 12.

[39] Maj. Op. at 12-13.

[40] Maj. Op. at 12-13.

16

Appeals have emphasized, is that it preserves the ability of litigants to advance claims that the first-filed forum does not allow to be adjudicated on the merits. This danger of litigation prejudice is the same whether the two suits were brought by the same parties or opposing ones. The reasoning of our sister Courts of Appeals is as operative here as in the cases before them.

I disagree, moreover, with the assertion that the plaintiffs sought to maintain two actions to see in which one they would fare better. The plaintiffs explicitly told the District Court here, and the one in Louisiana, that they filed their claim in Delaware as a precaution in case the Louisiana court determined that it could not hear their claims on the merits. After all, if the Louisiana court dismissed their claim without any assessment of the merits, the District Court here was their court of only resort, and filing sooner rather than later helped ensure timeliness in Delaware. This is not a litigation strategy designed to get the plaintiffs multiple bites at the apple or a more favorable judge or decisional law than what was offered in Louisiana. Rather, this is a litigation strategy designed to get the plaintiffs a seat at the table to present their claims to a single U.S. District Court.

As to the purported inequities of successive litigation generally, forum shopping is indeed a recognized basis for overriding the first-filed rule's presumption that the first court to receive a case should have priority.[41] It does not follow, however, that concurrent filings—whether by the same or different parties—is a basis for dismissing a case with

---

[41] See *Univ. of Pa.*, 850 F.2d at 972.

prejudice such that the dispute is never heard at all. Indeed, the majority opinion's forum shopping concerns are nowhere to be seen in our cases addressing other successive and/or concurrent litigation situations. Under our rule of res judicata, for example, litigants are entitled to bring—and our courts required to entertain—new filings of previously presented claims unless those claims were previously adjudicated on the merits.[42] Far from the majority opinion's view that a successive filing of an unheard claim should be barred as inequitable, res judicata reflects the principle that, when the first court that a plaintiff petitions is unable to entertain her claims, she may go to another and another until she finds one that can. Under ordinary res judicata principles, the plaintiffs here would not be precluded from proceeding in Delaware.[43]

Our cases in other successive and/or concurrent litigation contexts track the same contours as the res judicata rule. Where a plaintiff has filed successive duplicative suits within the same district court, we have expressly recognized only stay, consolidation, and dismissal *without* prejudice as

---

[42] *Blunt*, 767 F.3d at 277.

[43] The majority opinion illuminates its departure from res judicata principles with its claim that "the procedural posture of the first-filed case, on the date the second-filed actions were dismissed, is irrelevant to the analysis." Maj. Op. at 9-11. If the majority opinion fashioned the first-filed rule consistent with res judicata principles, there would be no need to fix "a particular moment in time" at which "to take a snapshot of the cases." *See* Maj. Op. at 11.

18

the options available to the court.[44] Compared to that context, the case against dismissal with prejudice is stronger under the first-filed rule, as parallel cases in different states are more likely to involve different personal jurisdictions and/or statutes of limitations. Meanwhile, where abstention principles counsel deference to a parallel state proceeding,[45] we have repeatedly emphasized the importance of staying— and not dismissing—the federal case where any of the

---

[44] *Walton*, 563 F.2d at 70-71 (en banc) (Judge Garth observed that, "When the district court became aware that the two actions begun by Mrs. Walton were virtually identical, it could have dismissed her second complaint *without prejudice* or it could have stayed proceedings in the second action until judgment was entered in the first") (emphasis added).

[45] *E.g. Younger v. Harris*, 401 U.S. 31 (1971) (requiring abstention where judgment would interfere with ongoing state enforcement proceeding); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) (permitting abstention in limited circumstances because of duplicative state court litigation); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) (affirming abstention in deference to complex state administrative proceedings)*; see also Colorado River*, 424 U.S. at 817 ("[T]here are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts."). *See generally* 17A Charles Alan Wright et al., Fed. Prac. & Proc. Juris. § 4241 (3d ed.) ("Abstention Generally").

requested relief may be unavailable from the state forum.[46] As we explained in *Feige v. Sechrest*, a stay "retains the sensitivity for concerns of federalism and comity implicated by . . . abstention, while preserving appellants' right to litigate their claims in the federal forum should the [state] courts, for jurisdictional or other reasons, fail to adjudicate them."[47]

Our consistent position—that an earlier-filed action precludes a later one only if the earlier one has been adjudicated on the merits—reflects the fairness principle that

---

[46] *See, e.g.*, *Feige v. Sechrest*, 90 F.3d 846, 851 (3d Cir. 1996) ("The entry of a stay rather than a dismissal prevents those claims from becoming time-barred should jurisdiction be somehow lacking in the [state court], and the preclusion doctrines of res judicata and collateral estoppel will prevent their re-litigation in the more likely event that court proceeds to judgment."); *Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 138 (3d Cir. 1988) (reversing dismissal under *Colorado River* doctrine because "some matters arguably will remain for resolution after the state proceedings" and instructing district court to "determine the effect of the judgment by applying principles of res judicata to determine what issues of fact or law remain in the case"); *Monaghan v. Deakins*, 798 F.2d 632, 635 (3d Cir. 1986) *aff'd in part, vacated in part on other grounds,* 484 U.S. 193 (1988) ("It is settled in this circuit that a district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages and attorney fees when such relief is not available from the ongoing state proceedings.").

[47] *Feige*, 90 F.3d at 851.

litigants are entitled to a single day in court.[48] But though well-grounded in equity, the position is ultimately one of Article III obligation.

As recently noted by Judge Krause, "the mandate that federal courts hear cases within their statutory jurisdiction is a bedrock principle of our judiciary."[49] For, "[a]s the Supreme Court has instructed on numerous occasions, 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'"[50] "Proceed[ing] from the premise

---

[48] *Cf. In re Global Indus. Technologies, Inc.*, 645 F.3d 201, 204, 204 n.4 (3d Cir. 2011) (en banc) (describing bankruptcy parties as "entitled to be fully heard and to have their legitimate objections addressed" and focusing on the Bankruptcy Court's "refusal to give [the appellants] their proper place at the litigation table" as "the whole point of this appeal").

[49] *In re: One2One Communications, LLC*, __ F.3d __, 2015 WL 4430302 at *9 (3d Cir. July 21, 2015 (Krause, J., concurring).

[50] *In re Semcrude, L.P.*, 728 F.3d 314, 326 (3d Cir. 2013) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996)). *See also Willcox v. Consol. Gas Co. of New York*, 212 U.S. 19, 40 (1909) ("When a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction."); *Chicot County v. Sherwood,* 148 U.S. 529, 534 (1893) ("The courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends."). "Underlying these assertions is the

21

that '[i]n rare circumstances, federal courts can relinquish their jurisdiction *in favor of another forum*,'"[51] the unanimous Supreme Court in *Quackenbush v. Allstate* explained how this Article III duty constrains the abstention doctrines that are the state-federal analogue to the first-filed rule.[52] To wit, when abstention principles militate against a federal court's exercise of jurisdiction, the abstaining court's disposition of the case depends both on the nature of the claim and, if it is a damages claim, the ability of the other forum to hear it.[53] Where there is no other available forum to entertain a damages claim before an abstaining court, the Supreme Court held that an abstaining court may stay a damages action to avoid concurrent litigation, but it may not dismiss it.[54] The basis of this is that, "[u]nlike the outright dismissal or remand of a federal suit, . . . an order merely staying the action 'does

---

undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358-59 (1989).

[51] *One2One Communications*, 2015 WL 4430302 at *9 (Krause, J., concurring) (quoting *Quackenbush*, 517 U.S. at 722).

[52] *Quackenbush*, 517 U.S. at 716-23, 728, 731.

[53] *Id*.

[54] *Id*.

not constitute abnegation of judicial duty . . . [a]s there is only postponement of decision for its best fruition.'"[55]

The teaching of *Quackenbush* is that "where there is no other forum and no later exercise of jurisdiction . . . relinquishing jurisdiction is not abstention; it's abdication."[56] A judge's primary function is to decide cases within its jurisdiction. Judge-made canons of comity and equity cannot supplant that duty, and for this reason, too, a district court may not properly terminate a claim under the first-filed rule that has not, and will not, be heard by any other court. In

---

[55] *Id*. at 721 (quoting *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 29 (1959)). The *Quackenbush* Court emphasized that the "distinction between . . . dismissals and abstention-based decisions merely to stay adjudication of a federal suit" is crucial in this respect. *Id*. at 720. Indeed, it accounts for the divergent results of companion cases decided on the same day in 1959—*Louisiana Power & Light v. City of Thibodaux* and *County of Allegheny v. Frank Mashuda*— which each involved district court abstentions from exercising diversity jurisdiction over an eminent domain action. *See id.* at 721 (*comparing Thibodaux*, 360 U.S. 25 *with Cnty. of Allegheny*, 360 U.S. 185). The district court in *Thibodaux* stayed the federal action; the district court in *County of Allegheny* dismissed the federal action; and "[b]ased in large measure on this distinction," the Supreme Court affirmed the *Thibodaux* court and reversed the *County of Allegheny* court. *Id.*

[56] *One2One Communications*, 2015 WL 4430302 at *9 (Krause, J., concurring).

23

short, "the Judiciary has a responsibility to decide cases properly before it, even those it 'would gladly avoid.'"[57]

In sum, the vast corpus of successive litigation and concurrent litigation authority holds that a second-filed suit may not be dismissed with prejudice solely on the basis of equity or judicial management. This consistent rejection of dismissal with prejudice except as according to some other recognized basis—res judicata, jurisdiction, mootness, or the like—is well-grounded in both fundamental fairness and the constitutional duties of federal courts. Those considerations apply as fully here as ever, and they cannot be overcome by concern for purported forum shopping.

## IV

For the above reasons, I would say that a second-filed action "should be stayed, rather than dismissed, unless it is absolutely clear that dismissal cannot adversely affect any litigant's interests."[58] The District Court's dismissals with

---

[57] *Zivotofsky ex rel. Zivotofsky v. Clinton*, 132 S. Ct. 1421, 1427 (2012) (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264 (1821)).

[58] *See Central States,* 203 F.3d at 444. I emphasize that this is not a "no dismissal rule." Maj. Op. at 14. A second-filed court may always dismiss with an express caveat that the plaintiff has leave to re-file if the first-filed court finds it is unable to adjudicate the case on the merits. *Worthington v. Bayer Healthcare, LLC*, 2012 WL 1079716, at *8 (D.N.J. 2012), took such an approach, and it is exemplary of how a court can dismiss under the first-filed rule without risking prejudice to

prejudice were at fundamental odds with this precept, needlessly foreclosing the plaintiffs' final chance at a lone hearing on the merits. The premature judgments caused two hundred people to be without redress for life-altering injuries, and I believe they should be vacated and the case remanded for further proceedings.

I respectfully dissent.

---

any litigant. Meanwhile, dismissal with prejudice remains appropriate in the event that the plaintiff is clearly unable to prosecute her claims in the second-filed court.